Robert J. Sise, J.
This is a proceeding for support instituted by Ida Kakarapis by petition verified on May 13,1968 alleging in substance that she is the wife of respondent and mother of Brenda Kakarapis, respondent’s 18-year-old daughter.
*516 The respondent has conceded legal responsibility for the support of his daughter but has denied responsibility for the support of the petitioner contending that she is not his wife.
The matter was heard by this court on September 17, 1968. The facts are: that petitioner and respondent were married in the City of New York, New York, on October 23, 1946; that thereafter they took up residence as husband and wife and two daughters were born of their marriage. Only the younger of the two, Brenda Kakarapis is claimed as a dependent child. The parties continued to live as husband and wife with their said daughter until experiencing differences and difficulties in 1967.
On October 20, 1967 Louis Kakarapis and Ida Kakarapis signed a handwritten instrument designated as a separation agreement and reading as follows: 1 ‘ Legal custody Linda Renee 20 yrs. old and Brenda Lou Kakarapis 17 yrs. to Mrs. Ida Ostrander Kakarapis.
‘ ‘ Visitation rights to: Louis George Kakarapis.
“ Payment of support for minors: $25.00 a week paid on each Monday.
“ Half of sale of house after bills are paid to Mrs. Ida Ostrander Kakarapis in lieu of support which she prefers & % of studio equipment.
“ Furniture of house to go to wife except one bedroom suit given to husband by his mother Mrs. Georgette Kakarapis.
“ The sum of $600 to wife upon divorce to help establish her in another domicile other than the home of 8 Home St., Fort Plain, N. Y.”
Shortly thereafter respondent went to the City of Juarez, Chihuahua, Mexico, signed the municipal register meeting .the residence requirements of Mexico in connection with his action for divorce brought there. Ida Kakarapis, wife, appeared in the divorce action by attorney and on November 7,1967 a decree of divorce was granted by the First Civil Court of the District of Bravos, Chihuahua, Republic of Mexico, in which the marriage of the parties was dissolved. The afore-mentioned separation agreement was approved, ratified and incorporated by reference into the judgment of divorce.
It is conceded that within a few days following November 7, 1967 respondent returned to the State of New York, and resumed his residence in this State.
Respondent contends that the Mexican divorce has dissolved the marriage and that he has no obligation toward petitioner other than that provided for in the decree of the Mexican court granted on November 7,1967.
*517 Petitioner argues that the Mexican decree of divorce is a nullity because of the provisions of section 250 of the Domestic Relations Law which in substance provides that a person obtaining a divorce in another jurisdiction who was domiciled in the State of New York within 12 months prior to the commencement of the proceeding therefor and who resumed residence in this State within 18 months after his departure therefrom shall be deemed prima facie domiciled in New York State when the divorce proceeding was commenced.
The question therefore to be decided by this court is the effect of section 250, if any, on the law of the State of New York as enunciated in the case of Rosenstiel v. Rosenstiel (16 N Y 2d 64). The essence of the Rosenstiel decision as rendered by Judge Bergan is (p. 74) “ a balanced public policy now requires that recognition of the bilateral Mexican divorce be given rather than withheld and such recognition as a matter of comity offends no public policy of this State.”
The Rosenstiel decision further declares that domicile is not a prerequisite to jurisdiction over a marriage, pointing out that New York undertakes matrimonial jurisdiction over nondomiciliaries who were married in New York State. The basis of jurisdiction in the Mexican court is held to be residence rather than domicile.
Section 250 of the Domestic Relations Law was enacted almost two years after the Rosenstiel decision was rendered. Surely, this landmark decision affecting matrimonial jurisprudence was well-known to the Legislature when that section was enacted. Had New York legislators sought to nullify the effect of the Rosenstiel decision on foreign divorces, then certainly more decisive and comprehensive language could have been chosen.
In a New York Supreme Court decision, Special Term Queens County, Rose v. Rose (N. Y. L. J., Oct. 9, 1968, p. 19, col. 4) Mr. Justice Holtzmah dismissed an action brought in the New York Supreme Court for divorce on the ground of cruel and inhuman treatment, upon plaintiff’s rendering evidence of a bilateral Mexican decree of divorce obtained against the same defendant husband on March 20, 1968 some three months prior to the New York divorce action.
The defendant husband did not contest the New York divorce action but the court on its own motion granted judgment dismissing plaintiff’s complaint with the finding that the Mexican divorce abolished the marital res, in effect finding there was no longer a marriage to be dissolved by the New York divorce action.
*518 This court decides that section 250 of- the Domestic Relations Law does not overthrow the Rosenstiel principle of law and therefore finds that petitioner is entitled to no order herein providing for her support. The Mexican decree is valid.
It is decided, however, that respondent is legally chargeable with the support of Brenda Kakarapis, his daughter, and that respondent’s support obligation for his said child should be fixed at $25 weekly commencing on Friday, May 17, 1968 with respondent to be credited for support payments made by him to petitioner from and after that date and during the pendency of this proceeding.